# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|  |  |
|---|---|
| CHERYL ADESZKO, | ) |
| Plaintiff | ) |
| v. | ) No. 05-C-4589 |
|  | ) HONORABLE DAVID H. COAR |
| SGT. DEGNAN, OFFICER LARSEN #08, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Before this Court is a motion for summary judgment filed by Sergeant Jeffrey Degnan ("Degnan") and Officer Amanda Larsen ("Larsen") (collectively "Defendants")[1] against Cheryl Adeszko ("Plaintiff") pursuant to Federal Rule of Civil Procedure 56. For the reasons stated below, Defendants' motion is GRANTED in part and DENIED in part.

## FACTS

Plaintiff was married on August 9, 2003, and held her reception that night at the Holiday Inn in Carol Stream, Illinois. Facts ¶¶ 5, 6. An argument involving Plaintiff's husband broke out in the hotel bar and moved outside to the front of the building. Facts ¶¶ 13, 15. Hotel staff contacted the Carol Street Police Department. Facts ¶ 16. Police arrived, and Plaintiff walked outside to find them speaking with her husband, telling him to calm down and suggesting that he go inside the hotel. Facts ¶ 20. Plaintiff pulled her husband away from the altercation, but after taking four steps toward the building he "disappeared." Facts ¶¶ 21-24. Plaintiff turned around

---

[1] Plaintiff filed a motion to dismiss Officer Peter Charon voluntarily. That motion is granted.

to find her husband face down on the ground with two officers on top of him. Facts ¶ 25. Though unknown to Plaintiff at the time, Larsen and Chacon were the two officers who arrested her husband. Larsen Aff. ¶¶ 5,7,8; Larsen Dep. at 55-61. Plaintiff crouched down next to her husband and the officers, yelling that her husband was innocent and that the police should get off of him. Facts ¶ 28.

At this point,[2] Degnan grabbed Plaintiff from behind by her upper left arm and turned her toward him. Facts ¶ 29. Plaintiff maintains that as a result of this motion her left hand "made contact" with the lower side of the officer's face. Facts ¶ 30. The contact seems to have been forceful enough to split Degnan's lower lip. Facts ¶ 32. According to Plaintiff, Degnan then threw her against a wall and she fell to the ground. Facts ¶ 34; Adeszko Dep. at 89. Degnan proceeded to secure Plaintiff by placing a knee or other body part on her back, then began putting handcuffs on her wrists. Facts ¶¶ 35, 37. At this stage Larsen assisted Degnan with Plaintiff's arrest, though it is unclear whether she was actually involved in placing the handcuffs. Def.'s Resp. to Add'l Facts ¶ 13. According to Larsen, she held one of the Plaintiff's arms while Degnan handcuffed her. Larsen Dep. at 62. Plaintiff was charged with two counts of battery, both of which were later dropped by the prosecutor. Facts ¶¶ 43, 46.

Plaintiff's § 1983 complaint was first filed with this court on August 10, 2005, then amended on February 22, 2006. In it, Plaintiff seeks remedies based on allegations that she was falsely arrested, and that her arrest was executed using unreasonable force in violation of her constitutional rights.

---

[2]Defendants' accounts of the events in this paragraph vary greatly from that which has been presented by the Plaintiff. *See generally* Larsen Dep. at 47-64; Degnan Dep. at 27-43.

**STANDARDS**

A party seeking summary judgment has the burden of showing, through "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact that would prevent judgment as a matter of law. Fed. R. Civ. Plaintiff. 56(c). On a motion for summary judgment, courts "must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." *Allen v. Cedar Real Estate Group, LLP*, 236 F.3d 374, 380 (7th Cir. 2001).

Even so, the nonmoving party may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather, he must go beyond the pleadings and support his contentions with proper documentary evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To successfully oppose the motion for summary judgment, the non-movant must do more than raise a "metaphysical doubt" as to the material facts, *see Wolf v. Northwest Ind. Symphony Soc'y*, 250 F.3d 1136, 1141 (7th Cir. 2001) (citation and quotation omitted), and instead must present definite, competent evidence to rebut the motion, *see Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001); Fed. R. Civ. Plaintiff. 56(c).

Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A non-moving party who bears the burden of proof on a specific issue must demonstrate by specific factual allegations that there is a genuine issue of material fact in dispute. *McMillian v. Svetanoff*, 878 F.2d 186, 188 (7th Cir. 1989). This evidence provided by the non-movant must be sufficient to

enable a reasonable jury to find in his or her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The Court must decide, based on admissible evidence, whether any material dispute of fact exists that requires a trial. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

## ANALYSIS

Defendants have asserted an affirmative defense of qualified immunity that is relevant to both counts against both remaining parties. Def.'s Affirm. Defense. In that pleading, Defendants claim that because of their status as law enforcement personnel of the Carol Stream Police Department, they are shielded from all § 1983 liability in this matter.

### *Count I: Excessive Force*

Plaintiff claims that Degnan "grabbed and physically accosted" her during the arrest in a manner that was unprovoked, "excessive and unreasonable," and that the other Defendants "stood by and allowed this use of force." Am. Compl. at 2. Defendant Degnan responds by saying that qualified immunity protects him from this claim, in that a reasonable police officer could have believed the degree of physical coercion used was constitutional. Summ. J. Mem. at 11. Defendant Larsen claims that she did not use force against Plaintiff at any point and did not have an appreciable opportunity to intervene in Degnan's actions. *Id.* at 10.

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must employ allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is

necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court will consider "the circumstances the officer was confronted with not through the 20/20 vision of hindsight, but through the more immediate perspective of a reasonable officer on the scene." *Lanigan v. Village of Ease Hazel Crest, Illinois*, 110 F.3d 467, 475 (7th Cir. 1997) (citing *Frazell v. Lanigan*, 102 F.3d 877, 882 (7th Cir. 1996). Determining whether or not a given arrest rises to the level of excessive force "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom," therefore the Seventh Circuit has "held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Abdullah v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (citing *Santos v. Gates*, 287 F.3d 846 (9th Cir. 2002)).

Many of Plaintiff's factual claims regarding arresting officers' actions are in dispute, and even when the facts are taken in the light most favorable to the Plaintiff they don't necessarily represent unwarranted means of arresting someone for battery. However, there can be little doubt that the force allegedly used against the Plaintiff, such that she was thrown against a wall and pressed to the ground, face first, with sufficient force to cause her to vacate her bladder, could be deemed excessive by a reasonable jury. There are important issues of fact that must be resolved before the question of the arrest's constitutionality can be determined, and which make summary judgment inappropriate: whether or not Degnan threw Plaintiff against the wall, pushed her against the wall, or simply pressed her against the wall; whether or not Degnan kneeled on Plaintiff and, if he did, what amount of force he applied; to what degree the physical indicators of violence (e.g., scrapes, bruises, and vacating the bladder) are to be attributed to Degnan's actions, and whether they indicate unconstitutional abuses. These issues quickly degenerate into

a he said-she said that cannot be resolved as a matter of law.

Degnan furthermore does not qualify for qualified immunity when the facts are viewed in the light most favorable to the Plaintiff because it cannot be said with a sufficient degree of certainty that his actions didn't "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See Smith v. City of Chicago*, 242 F.3d 737, 744 (7th Cir. 2001) (precluding qualified immunity on that basis). Even if the arrest itself was warranted, as is discussed below, throwing an arrestee against a wall and then kneeling on her back with sufficient force to make her urinate may be deemed a constitutional deprivation or a or violation of Illinois statute outside the protection of qualified immunity. *See* 745 ILCS 10/2-202 (making officer unavailable in where actions were "willful and wanton," defined at 745 ILCS 10/1-210 as "show[ing] an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property"). This could move beyond the "ample room for mistaken judgments" allowed police officers, *Payne v. Pauley*, 337 F.3d 767, 776 (7th Cir. 2003), and amount to actions that a "reasonable officer" would find "unlawful in the situation he confronted," *see Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). For these reasons, the motion to dismiss Count I is DENIED with respect to Degnan.

Summary judgment on the claim of excessive force against Larsen represents a more difficult question, as it is not clear from the record whether or not she had anything to do with the unconstitutional abuses that allegedly took place during the arrest. The most egregious actions of the arrest were executed by Degnan. *See, e.g.,* Adeszko Dep. at 89, 93-97; Pl.'s Resp.

to Facts ¶¶ 35-40.[3]  The only significant testimony including Larsen in the physical act of the arrest came from the officer's own testimony, in which Larsen testified that she "took ahold of one of [Plaintiff]'s hands and put it behind her back," allowing Degnan to handcuff her.  Larsen Dep. at 62.  At no point does Plaintiff implicate this action as constituting a constitutional deprivation for the purposes of this suit.  Because Section 1983 is "based upon personal liability and predicated upon fault," Larsen cannot be held liable for Degnan's more severe actions to the extent that she neither "caused or participated in an alleged constitutional deprivation."  *Wolf-Lillie v. Sonquist*, 699 F.2d 864-69 (7th Cir. 1983).

Nonetheless, an officer can be held liable under § 1983 if that officer fails to prevent other law enforcement officers from infringing on the rights of citizens.  This affirmative duty is triggered where the officer in question had reason to know: (1) that excessive force was being used; (2) that a citizen had been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official; and, in addition, that the officer with the affirmative duty to intervene had a realistic opportunity to do so.  *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).  Plaintiff correctly asserts that Larsen was present for some portion of her handcuffing.  Resp. to Summ. J. Mot. at 11.  While there is nothing in the record to support the

---

[3]Plaintiff now claims for the first time that it may have been Larsen who placed a knee or other body part on her back.  *See* Resp. to Summ. J. at 11.  However, this is controverted by her own pleadings, which reference only Degnan's involvement.  *See* Am. Compl. ¶¶ 7 ("Without any basis or provocation, one of the Defendants, believed to be SGT. DEGNAN, grabbed and physically accosted the Plaintiff."); Adeszko Dep. at 89, 93-97; Pl.'s Resp. to Facts ¶¶ 35-40; *see also* Larsen Dep. at 61-63.  To the extent that additional claims should not be introduced for the first time in summary judgment pleadings, and that the claim itself is speculative and unsupported by any part of the record, this allegation raises nothing more than a "metaphysical doubt" as to Larsen's direct involvement, and will therefore be disregarded.  *See Wolf*, 250 F.3d at 1141.

newly-introduced theory that Larsen herself was directly responsible for constitutional abuse, *see* note 2 *supra*, this moment of cooperation between the two officers nonetheless makes it possible that Larsen became aware of Degnan's abusive techniques and had a "realistic opportunity" to alleviate further harm. *See Yang*, 37 F.3d at 285. Excessive force determinations are to be made sparingly at the summary judgment stage. *Abdullah*, 423 F.3d at 773. In light of remaining questions of fact regarding Larsen's alleged failure to intervene, this issue cannot be decided at present. Defendants' motion for summary judgment on Count I with respect to Larsen is DENIED.

### *Count II: Unlawful Arrest*

Plaintiff also maintains that Defendants lacked "probable cause to arrest and/or charge the Plaintiff," and that they knowingly "placed false criminal charges against her" in a manner that was "intentional, willful, and wanton." Am. Compl. at 3. In response, Defendant Degnan maintains that he had probable cause to arrest Plaintiff for battery based on the events of the night in question and that, in any event, qualified immunity should protect him from the claim because he had arguable probable cause to take the action. Summ. J. Mem. at 6-9. Defendant Larsen maintains that she had probable cause to arrest Plaintiff for battery because she reasonably relied on what Degnan said and did. *See id.* at 5-6; Larsen Aff.

"A necessary predicate to any unlawful arrest claim under §1983 is the absence of probable cause," *Jones by Jones v. Webb*, 45 F.3d 178, 181 (7th Cir. 1995), and as a result "the existence of probable cause for arrest is an absolute bar to a § 1983 claim for unlawful arrest or false imprisonment," *Robinson v. Lother*, 2006 WL 418664, at * (7th Cir. 1985) (citation omitted). Arresting officers need not have a distinct probable cause for each charge they later

bring against an arrestee. *See Devenpeck v. Alford*, 543 U.S. 146, 153-54 (2004); *Calusinski v. Kroger*, 24 F.3d 931, 935 (7th Cir. 1994) ("At the time of the arrest police officers need probable cause that a crime has been committed, not that the criminal defendant committed all of the crimes for which he or she is later charged."). Finally, merely assisting another officer in effectuating an arrest in progress does not require that the assisting officer acquire probable cause independent of the initiating officer. *See O'Leary v. Luongo*, 692 F.Supp. 893, 902 (N.D.Ill.1988) (absent evidence otherwise, responding to another officer's call for assistance gives responding officer probable cause); *Carr v. Village of Richmond*, 1999 WL 626773, at *15-16 (N.D.Ill. July 9, 1999).

In this instance, the standard for determining the existence of probable cause is impacted by Defendants' asserted affirmative defense of qualified immunity. In the context of an alleged unlawful arrest, qualified immunity will protect the Defendants where "a reasonable officer could have believed the plaintiff's arrest to be lawful, in light of clearly established law and the information the arresting officers possessed." *See Tangwall v. Stuckey*, 135 F.3d 510, 514 (7th Cir. 1998). Even if an officer is mistaken in believing the arrest to be lawful, the immunity will still apply where the probable cause arguably existed. *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998) (citing *Edwards v. Cabrera*, 58 F.3d 290, 293 (7th Cir.1995); *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). Arguable probable cause exists when "a reasonable police officer in the same circumstances and with the same knowledge...as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law." *Humphrey*, 148 F.3d at 725 (citation omitted) (original emphasis). In this instance, the claim of unlawful arrest fails against both officers because, at a minimum, arguable probable cause existed and

qualified immunity is entirely appropriate.

In her deposition, Plaintiff states that her hand "made contact" with the officer's face. Adeszko Dep. at 87-91. Under Illinois law, a battery is committed when a person "intentionally or knowingly without legal justification and by any means ⋯ makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3. That physical contact took place in this instance is undisputed. That touching the back of your hand to another's face could be interpreted as "insulting or provoking" is entirely reasonable. The only remaining question in determining the existence of probable cause, therefore, is whether or not Degnan knew that the action was unintentional as Plaintiff asserts.

There is no reason Degnan should have foreseen the very unlikely scenario that his act of turning Plaintiff around, rather than Plaintiff's own volition, would result in his being "struck in the face with sufficient force to draw blood by a woman who was shouting at other officers who were just steps away." Summ. J. Mem. at 8. To expect anything different in light of the totality of the circumstances would place too high a burden on a law enforcement officer's ability to make determinations in the field. *See United States v. Parra*, 402 F.3d 752, 764 (7th Cir.2005) cert. denied 126 S.Ct. 1181 (2006) ("[T]he totality of the circumstances, viewed in a common sense manner, [must] reveal[ ] a probability or substantial chance of criminal activity on the suspect's part[.]").

As a general matter, physical contact between an arrestee and a law enforcement officer, however minor, can provide probable cause for an arrest for battery. *See, e.g., Gluszeck v. Linkletter*, 1997 WL 769464 (N.D. Ill. Dec. 9, 1997); compare *Mihalko v. Burnham Police Officer J. Daley*, 2002 WL 726917 (N.D. Ill. April 24, 2002). In *Mihalko*, the court determined

that summary judgment was precluded because "the determination of whether a reasonable officer in [defendant's] position would have believed he had probable cause to arrest Plaintiff for battery depend[ed] on whether one believe[ed] his version of the events on that night or Plaintiff's." *Id.* at *6 (discussing whether Plaintiff 's actions amounted to an "unintentional brushing against someone with one's clothing" or, according to the alternative explanation, a strike against the arresting officer). On the other hand, in *Gluszeck* the court found that summary judgment was appropriate where there was no disagreement that some contact was made between the elbow of the arrestee and the law enforcement officer involved. *Gluszeck*, 1997 WL 769464 at * 3. Whether or not the action was unintentional, as the plaintiff in *Gluszeck* claimed, it could nonetheless be reasonably perceived as intentional, and therefore served as probable cause for the arrest. *Id.*

In the instant case, there are significant discrepancies between the parties with respect to the physical contact involved. Defendant Degnan maintains unequivocally that Plaintiff slapped him, while Plaintiff vigorously denies this and says that her hand incidentally "made contact" with his face as a result of his own actions. *See* Def.'s Resp. to Add'l Facts ¶¶ 7-9. However, there is no dispute that physical contact occurred, placing the contested facts closer to the uncontested contact in *Gluszeck* than the disputed touch of *Mihalko*. This Court is decidedly not empowered to determine whether or not Plaintiff's actions should be defined as a slap. However, at this point the question of qualified immunity requires only a determination of whether or not the arrest was reasonable based on an objective evaluation of the information then available to the arresting officer. Because the presence or absence of intent is the only relevant discrepancy, that can be determined on the uncontested facts alone.

Plaintiff denies that it was her intention to make contact, but in terms of the affirmative defense of qualified immunity, a hindsight determination of her internal state of mind is irrelevant. The test for the sake of Degnan's qualified immunity as a law enforcement officer is whether, based only on the objective facts at the time and the totality of the circumstances, a reasonable officer could have believed that he had probable cause to arrest Plaintiff for battery. *See Hunter v. Bryant*, 502 U.S. 524, 528 (1991). Plaintiff has provided nothing but her own state of mind that could lead a trier of fact to the contrary conclusion that intent to batter was lacking. *See United States v. Reis*, 906 F.2d 284, 289 (7th Cir. 1990) ("[A] defense based on the offender's perceptions of the circumstances is not sufficient to defeat probable cause, because probable cause is based on what is known to the arresting officer at the time, not on what goes on in the offender's mind."). It is uncontested that Degnan knew that Plaintiff had made contact with his face with sufficient force to split his lip, and in the context of her having shouted at the officers moments before in the middle of a generally tense situation, it was reasonable to assume that she had intended to do it. Therefore, it is clear that "a reasonable officer could have believed [Adeszko's arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

Plaintiff's responses to Defendant's summary judgment motion or 56.1 statement of facts do not justify any other outcome. Plaintiff confusingly attacks Defendants' pleadings for misunderstanding the events in question and ignoring the burden presently involved. Resp. to Summ. J. Mot. at 4. However, as described above there was a reasonable basis for probable cause regarding at least one crime involved in the arrest, even when the facts are viewed in the light most favorable to the Plaintiff. This arguable probable cause adequately justifies both the

arrest itself, as initiated by Degnan, and Larsen's assistance in that arrest. Plaintiff tries to complicate the issue by mentioning the complaint filed by Larsen against the Plaintiff, *id.* at 4-5, which is completely irrelevant to the probable cause that prompted Degnan to act.[4] Plaintiff further complicates the issue by mentioning the many contested issues of fact regarding the events of the night, *id.* at 5-7, but concedes the primary fact that matters: "the back of Cheryl's hand hit his face." *Id.* at 7. Whether or not Plaintiff intended to strike Degnan, or even actively applied her muscles to the task, the fact of the matter is that Plaintiff's hand struck Degnan's face in an already tense situation; a reasonable officer could have perceived that this amounted to probable cause, and therefore even if he was mistaken in that belief, qualified immunity protects his decision to arrest Plaintiff on suspicion of battery.

Larsen, insofar as she was assisting a colleague in an arrest that was already underway, is similarly protected from liability because she could have reasonably relied upon her colleagues actions as a basis for probable cause. *See O'Leary*, 692 F.Supp. at 902; *Carr*, 1999 WL 626773, at *15-16. Overhearing Degnan's comment to Plaintiff, "Don't hit the police," could also have provided her with probable cause or arguable probable cause. In any event, both at the scene of the arrest and in the filing of the criminal complaint against the Plaintiff, it was well within Larsen's authority to reasonably rely on the words and deeds of Degnan as grounds for probable cause.

Defendants' motion for summary judgment on Count II is therefore GRANTED.

---

[4]If anything, the fact that Larsen might have her own, independent, basis for probable cause for a battery arrest potentially provides additional justification for the arrest.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED with respect to Count II, and DENIED with respect to Count I.

                                    Enter:

                                    /s/ David H. Coar
                                    David H. Coar
                                    United States District Judge

Dated: **November 29, 2006**